IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

TAMMIE ARLENE O'BRIEN,                                      Case No. 6:13-cv-01092-ST

                          Plaintiff,                                        FINDINGS AND
                                                                          RECOMMENDATION
        v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

_____ Defendant.

STEWART, Magistrate Judge:

        Plaintiff, Tammie O'Brien, seeks judicial review of the final decision by the

Commissioner of the Social Security Administration ("Commissioner") denying her application

for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  This Court

has jurisdiction to review the Commissioner's decision pursuant to 42 USC § 405(g).  For the

reasons set forth below, the Commissioner's decision should be affirmed, and this case should be

dismissed.

## ADMINISIRATIVE HISTORY

        Plaintiff previously applied for DIB, alleging a disability beginning July 2, 2002, the date

on which she stopped working.  Tr. 10, 76-79.[1]  On January 25, 2005, Administrative Law Judge

("ALJ") Michael Haubner issued a decision finding her not disabled.  Tr. 76-79.

---

[1]  Citations are to the page(s) indicated in the official transcript of record filed on December 10, 2013 (docket #12).  This record
constitutes over 700 pages, but with some duplication.  Where evidence appears in the record more than once, the Court will
generally cite to the transcript page(s) on which that information first appears.

1 – FINDINGS AND RECOMMENDATION

On July 30, 2009, plaintiff again applied for DIB based on similar impairments and the same disability onset date of July 2, 2002, which she later amended to January 26, 2005. Tr. 10, 120. Her application was denied initially and on reconsideration. Tr. 83-94. Plaintiff then timely requested a hearing before an ALJ. Tr. 98-99, 102-19. On July 20, 2011, ALJ John Madden held a hearing, at which plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 31-72. On September 1, 2011, ALJ Madden issued a decision finding plaintiff not disabled from January 26 through June 30, 2005, the date last insured. Tr. 10-19. After the Appeals Council declined her request for review (Tr. 1-3), plaintiff filed this appeal to this court.

## BACKGROUND

Born in 1962, plaintiff was 42 years old on the date last insured. Tr. 18, 120. She completed the eleventh grade and has past relevant work experience as a fast food worker and caregiver. Tr. 46, 65-67. Plaintiff alleges that she is been unable to work due to back pain and "loss of feeling in both legs." Tr. 136.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F2d 498, 501 (9th Cir 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 US 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). Variable

interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F3d 676, 679 (9th Cir 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F2d 1484, 1486 (9th Cir 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 US 137, 140 (1987); 20 CFR § 404.1502. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 US at 140; 20 CFR § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 US at 140-41; 20 CFR § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 US at 140-41; 20 CFR § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 US at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 CFR § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner.

3 - FINDINGS AND RECOMMENDATION

At step five, the Commissioner must demonstrate that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 US at 141-42; 20 CFR § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 CFR § 404.1566.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity "during the period from her alleged onset date of July 2, 2002[,] through her date last insured of June 30, 2005." Tr. 12.

At step two, the ALJ determined that, through her date last insured, plaintiff suffered from the severe impairments of "obesity, status post gastric bypass surgery; chronic low back pain; mood disorder; and marijuana abuse." *Id.*

At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id.* Because plaintiff did not establish disability at step three, the ALJ continued to evaluate how her impairments affected her ability to work during the relevant period. The ALJ found that plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a)," but with the following limitations:

> [s]he can lift up to 20 pounds occasionally and 10 pounds frequently. She can stand/walk for about two out of eight hours and sit for about si[x] out of eight hours. She can only occasionally climb ramps/stairs, stoop, kneel, crouch, or crawl. She can no more than frequently balance. She cannot climb ladders, ropes, or scaffolds. She cannot perform complex tasks.

Tr. 14.

4 - FINDINGS AND RECOMMENDATION

At step four, the ALJ found that plaintiff was unable to perform her past relevant work through the date last insured.  Tr. 17.

Based on the testimony of the VE, the ALJ determined, at step five, that plaintiff could perform other work existing in significant numbers in the national and local economy despite her impairments, such as toy stuffer, eyeglass frame polisher, and charge account clerk.  Tr. 18. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act at any time between January 26 and June 30, 2005.  Tr. 19.

## FINDINGS

Plaintiff alleges that the ALJ erred by:  (1) finding her not fully credible; (2) improperly assessing the medical opinion of Robin Rose, M.D., an examining physician; and (3) failing to account for all of her impairments in the RFC assessment.

## I.    Plaintiff's Credibility

Plaintiff first asserts that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom statements concerning the extent and severity of her impairments.

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the alleged symptoms, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996) (citation omitted).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F3d

915, 918 (9th Cir 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995) (citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F3d 947, 959 (9th Cir 2002) (citation omitted).

At the hearing, plaintiff testified that the primary reason she cannot work is because of "constant pain." Tr. 62. Her back "hurt[s] all the time," and nothing provides relief. Tr. 62-63. She can stand for less than 10 minutes and sit for less than 30 minutes at one time due to pain. Tr. 63. This level of impairment had remained the same since 2005, despite the fact that she underwent gastric bypass surgery in December 2004 and maintained a significant weight loss until 2010. Tr. 60-64.

After summarizing her hearing testimony, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the extent of these symptoms were not fully credible" due to her failure seek treatment and inconsistent statements, as well as the lack of corroborating objective medical evidence. Tr. 14-16.

Notably, the ALJ found that plaintiff's credibility was impaired because "[t]here are scarce treatment records during the relevant adjudicatory period between January and June 2005," and those records "do not document that these [back pain] symptoms were as profound as [plaintiff] alleges." Tr. 15. Failure to seek medical treatment is a clear and convincing reason to reject a claimant's subjective statements. *Burch*, 400 F3d at 681; *see also* SSR 96-7p, *available at* 1996 WL 374186. Failure to report allegedly disabling symptoms to treatment providers

6 - FINDINGS AND RECOMMENDATION

during the adjudication period is also a valid reason to discount a claimant's credibility.  *Greger v. Barnhart*, 464 F3d 968, 972-73 (9th Cir 2006).  Where, as here, the date last insured is remote in time, it is more difficult to determine the nature of a claimant's limitations attributable to severe impairments during the relevant period.  Thus, contemporaneous self-reports to medical providers, as memorialized by their treatment notes, are the most accurate portrayal of functioning.  Yet the only treatment records on or around the adjudication period of January to June 2005 largely pertain to plaintiff's gastric bypass surgery.  Tr. 590-673.  Nevertheless, as the ALJ observed, plaintiff did not report any back or leg pain to her medical providers, or seek any treatment for back or leg pain, from the time she was discharged from the hospital in March 2005 through June 30, 2005, the date last insured.  Tr. 15, 666-73.

For instance, in March 2005, plaintiff reported post-discharge that she "was doing reasonably well" and exhibited no signs of distress.  Tr. 670.  In April 2005, plaintiff had "essentially" no complaints, was "feeling good," and walked with a normal gait.  Tr. 668.  A physician's authorization form for a walker, completed in July 2005 by Zafar Parvez, M.D., listed plaintiff's diagnoses as morbid obesity, pneumonia, hypertension, and septicemia, which caused "pain and weakness" in her lower body and, by extension, impaired ambulation.  Tr. 666.  While a back problem would have significantly strengthened Dr. Parvez's request for a walker, he did not note any issues relating to plaintiff's back, despite the fact that he included more benign conditions like hypertension.  *Id.*  Further, at that time, Dr. Parvez indicated that plaintiff's prognosis was "very good to excellent."  *Id.*

In fact, the record does not reflect any complaints of back pain by plaintiff between June 3, 2003, and January 26, 2006.  On June 2, 2003, plaintiff was discharged from physical

7 - FINDINGS AND RECOMMENDATION

therapy after "stat[ing] she is feeling better with reported pain level about 2/10 versus 8-9/10." Tr. 202; *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F3d 1001, 1006 (9th Cir 2006) (impairments that are effectively controlled with treatment are not disabling).  Over two years later, plaintiff sustained an on-the-job injury during her last work attempt after she "fell getting out of her car after work."  Tr. 547.  Accordingly, on January 27, 2006, she reported lower back pain to her employer.  *Id.*  As a result, plaintiff's employer determined that she was "unsuitable for work as a housekeeper" because, due to back pain, she was "unable to meet the job requirement of lifting 50 pounds," which is undisputedly well beyond her capabilities.  *Id.*; *see also* Tr. 14 (ALJ limiting plaintiff to a relatively physically restrictive RFC).  Plaintiff did not seek any subsequent medical treatment until October 2006 when she initiated mental health services.  Tr. 576-82.  Although she reported back pain to her mental health counselor at that time and later obtained care for other transitory physical conditions, she did not reinitiate treatment for her back pain until contacting John Hein, M.D., in October 2008.  Tr. 413.

In sum, plaintiff's failure to seek treatment or report her allegedly disabling conditions contravenes her testimony that she had disabling leg and back pain during the five-month adjudication period.  She does not now proffer a reason, finance-related or otherwise, for her failure to obtain services relating to these impairments between 2003 and 2008.  Tr. 56.  Indeed, plaintiff's more recent medical records confirm that her back and leg pain increased in severity only after her date last insured.  *See, e.g.*, Tr. 413 (plaintiff recounting to Dr. Hein in October 2008 that her "chronic back pain . . . has been worse over the last two to 3 years"), 547 (plaintiff reporting in January 2006 that she sustained a traumatic back injury).

8 - FINDINGS AND RECOMMENDATION

Additionally, the ALJ determined that plaintiff's pain allegations were not supported by objective medical evidence.  Tr. 15.  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F3d 853, 857 (9th Cir 2001).  In October 2008, after obtaining additional objective evidence concerning her back, Dr. Hein noted that plaintiff's "symptoms seem a little bit out of proportion to MRI findings [and] she did have an EMG done last year that was normal."  Tr. 410.  Likewise, the physician who interpreted plaintiff's October 2008 MRI described her degenerative disc disease as "nothing acute."[2]  Tr. 418.  As the ALJ reasonably concluded, "these treatment records undermine [plaintiff's] credibility and reliability as a historian."  Tr. 15.  Even where the evidence is capable of more than one rational interpretation, the ALJ's reasonable findings must be upheld.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1198 (9th Cir 2004)   .

Finally, the ALJ found that plaintiff provided "inconsistent testimony regarding her pain during the relevant adjudicatory period."  Tr. 15.  Inconsistencies in a claimant's testimony can serve as the basis for a negative credibility finding.  *Burch*, 400 F3d at 680-81.  When asked at the hearing "[d]o you remember how your back and your legs were" prior to the date last insured, plaintiff initially responded: "[i]t feels like how I feel right now."  Tr. 61-62.  In response to a question by her attorney if there was "any change from the way that you are, were then to the way that you are now?," she testified that her "legs . . . didn't used to feel a whole lot, but, how do I put it, in certain times I feel really bad, my legs and my back."  Tr. 62.  Her

---

[2] Although plaintiff reported to her physical therapist in April 2003 that she had a previous MRI, the record does not contain any objective medical evidence relating to her back impairment before 2008.  Tr. 211.

9 - FINDINGS AND RECOMMENDATION

attorney asked her to clarify whether she was "talking about now or you talking about then," and she said "[t]hen."  *Id.*  Plaintiff then stated "[b]ut, from then to now, it's the same."  Tr. 62.

The Commissioner contends that, as the ALJ concluded, these conflicting reports render plaintiff not fully credible.  Given that plaintiff likely had difficulty at the hearing remembering specific details of symptoms from six years ago, the Court does not find her testimony to be clearly inconsistent.  Nevertheless, the ALJ noted other, more persuasive contradictions in plaintiff's hearing testimony.  Specifically, plaintiff remarked that she is only able to sit for about 20 minutes and stand for less than 10 minutes at one time, and that these restrictions had been present to the same degree since 2005.  Tr. 63-64.  Yet the ALJ pointed out that plaintiff had been sitting for 40 minutes at the hearing without complaint.  Tr. 63.  While plaintiff responded that she wanted "to stand up 20 minutes ago," the fact remains that her conduct contradicts her statements.  *Id.*; *see also Light v. Soc. Sec. Admin.*, 119 F3d 789, 792 (9th Cir 1997) (ALJ may rely on conflicts between a claimant's testimony and her conduct at the hearing in assessing credibility).  Moreover, although the precise amount of time is not specified, both plaintiff and her husband completed Adult Function Reports in 2009 reflecting that plaintiff is not as limited in her ability to stand as indicated by her hearing testimony.  *See* Tr. 143-58 (plaintiff can hunt and fish, but "has a hard time walking up or down hills," and cannot stand "for long period[s] of time").

Because the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's credibility, the fact that one of the ALJ's relied-upon reasons was not legitimate is immaterial. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F3d 1155, 1162-63 (9th Cir 2007).  Thus, the ALJ's credibility finding should be affirmed

10 - FINDINGS AND RECOMMENDATION

II.    **Medical Opinion**

Plaintiff contends that the ALJ exhibited bias against Dr. Rose at the hearing.  She also argues that the ALJ neglected to provide a legally sufficient reason, supported by substantial evidence, to disregard the opinion of Dr. Rose.

A.    **Bias**

A "presumption of honesty and integrity" exists in those who serve as adjudicators for administrative agencies.  *Withrow v. Larkin*, 421 US 35, 47 (1975).  A claimant bears the burden of rebutting this presumption by showing "a conflict of interest or some other specific reason for disqualification."  *Rollins*, 261 F3d at 857-58 (citation and internal quotations omitted).

The ALJ commented at the hearing that it was odd plaintiff went to see a family practitioner who lived 200 miles away to assess her back impairment as it existed six years earlier and that plaintiff's attorney had a habit of sending his clients to Dr. Rose.  Tr. 42-43.  The ALJ also inaccurately observed that Dr. Rose had been "dropped . . . for some reason" by Disability Determination Services, a point on which plaintiff's counsel provided immediate clarification.  Tr. 43.  Nonetheless, plaintiff's contention of bias ignores the fact that the ALJ expressly stated he would "look at" Dr. Rose's opinion and determine if it "makes some sense" in the context of the record, which reflects an intention to evaluate that opinion on its merits.  Tr. 43-44; *see also Rollins*, 261 F3d at 858 ("expressions of impatience, dissatisfaction, annoyance, and even anger . . . do not establish bias") (citation and internal quotations omitted).  Thus, this contention of bias by the ALJ should be rejected.

///

///

11 - FINDINGS AND RECOMMENDATION

**B.**    **Weight Afforded to Dr. Rose's Opinion**

There are three types of medical opinions in Social Security cases: those from treating, examining, and non-examining physicians. *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005) (citation omitted). If a treating or examining physician's opinion is contradicted by another physicians' opinion, it may be rejected by specific and legitimate reasons. *Id.*

In June 2011, Dr. Rose performed a one-time evaluation of plaintiff at the request of her attorney. Tr. 553-64. After interviewing plaintiff, performing a physical examination, and reviewing forms she and her husband recently completed regarding her functioning, as well as her medical records from 2007 through 2009 and her physical therapy records from 2002 and 2003, Dr. Rose diagnosed plaintiff with "Chronic back pain with degenerative disc disease and joint disease and bilateral lower extremity radiculopathy" and "Extreme Morbid Obesity." Tr. 562. Dr. Rose opined that plaintiff was capable of standing and walking for three hours in an eight-hour workday, with breaks every 30 minutes; siting for three to four hours in an eight-hour workday, with breaks every 45 minutes; lifting 10 pounds frequently and 20 pounds occasionally; and occasionally reaching, climbing ramps and stairs, and stooping. Tr. 562-63. She remarked that plaintiff should avoid workplace hazards, extreme cold and heat, fumes, odors, dusts, gases, crawling, and kneeling. *Id.* Lastly, Dr. Rose stated that plaintiff would be expected to miss work "3-4x/month" due to her use of narcotics and "history of rape" and coma post-gastric bypass surgery. Tr. 563.

12 - FINDINGS AND RECOMMENDATION

In July 2011, plaintiff's attorney submitted the following additional records to Dr. Rose: gastric bypass surgery and hospitalization reports from December 2004 through March 2005, Dr. Parvez's post-surgery chart notes, and a report from Chuck Newcomb, a registered dietician, from September 2004.  Tr. 709.  Dr. Rose reviewed these records, but did not examine plaintiff a second time, and wrote an addendum to her June 2011 report specifying that the limitations she assessed the previous month "existed prior to June 30, 2005."  *Id.*

The ALJ afforded "little weight" to the opinion of Dr. Rose because:  (1) it was rendered several years after the date last insured and did not fully relate back to the period in question; (2) it was conclusory and "not explain[ed];" (3) it attributed many of plaintiff's functional limitations to extreme morbid obesity, but did not account for the fact that she weighed significantly less after her gastric bypass surgery; and (4) the degree of limitation assessed was not proportionate to the evidence of record.  Tr. 16-17.

An ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant adjudication period.  *Johnson v. Shalala*, 60 F3d 1428, 1432 (9th Cir 1995).  In addition, it is well-established that an ALJ may afford less weight, even where a treating physician is involved, to opinions that are not accompanied by explanations or references to clinical findings.  *Thomas*, 278 F3d at 957.  Inconsistency with the evidence of record is another legally sufficient reason for rejecting a doctor's opinion. *Tommasetti v. Astrue*, 533 F3d 1035, 1040-41 (9th Cir 2008); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F3d 595, 601 (9th Cir 1999).

In this case, substantial evidence supports the ALJ's evaluation of Dr. Rose's opinion. Dr. Rose's one-time examination of plaintiff transpired approximately six years after the date last

insured. Tr. 553. Dr. Rose's June 2011 assessment was not retrospective in that it did not relate plaintiff's current symptoms back to the relevant time period. Moreover, with the exception of physical therapy records from 2002 and 2003 showing that plaintiff's back pain abated with treatment, her opinion was based on evidence more than two years after the date last insured. Tr. 202, 553-64. While her July 2011 addendum indicated that plaintiff's functional limitations existed since on or before the date last insured, the medical records she reviewed in formulating that opinion do not support her conclusion. Tr. 709. Significantly, as addressed above, the medical records from 2003 through 2008 do not reflect any treatment for back pain, and plaintiff's complaints of back pain transpired well after June 30, 2005.

Dr. Rose also opined that several of plaintiff's functional limitations were caused or exacerbated by her extreme morbid obesity. *See, e.g.*, Tr. 563 (concerning the assessed postural limitations, Dr. Rose stated that plaintiff's "obese habitus, lumbar disease, deconditioning make these activities unrealistic"). Yet plaintiff testified at the hearing that she began losing weight during "the second-third month" after she was released from the hospital in March 2005. Tr. 56. By the end of 2005, plaintiff's weight decreased from approximately 240 pounds to 180 pounds. Tr. 60, 547, 668. She dropped as low as 150 pounds before she started to regain weight in 2010. Tr. 60, 62; *see also* Tr. 559 (plaintiff weighed 222 pounds at the time of Dr. Rose's June 2011 examination). Although plaintiff was still overweight at her lowest post-gastric bypass surgery weight, the extreme level of obesity on which Dr. Rose's assessment was premised did not last for a continuous 12-month period beginning on or between January 26 and June 30, 2005. *See Barnhart v. Walton*, 535 US 212, 217 (2002) (a claimant is not disabled if "within 12 months after the onset of an impairment . . . the impairment no longer prevents substantial gainful

14 - FINDINGS AND RECOMMENDATION

activity") (citation and internal quotations omitted); *Flaten v. Sec'y of Health & Human Servs.*, 44 F3d 1453, 1460-65 (9th Cir 1995) (a claimant must prove that her disability began on or before the expiration of her disability insurance coverage). Dr. Rose's opinion did not acknowledge or otherwise account for this fact, likely because, as noted above, her June 2011 evaluation was not rendered retroactively.  In other words, the functional restrictions Dr. Rose formulated in June 2011 were based on plaintiff's then-current weight of 222 pounds.  While she concluded in July 2011 that plaintiff's "morbid obesity and the lumbar disease were disabling" as of June 30, 2005, the date last insured, she failed to explain this conclusion or link it to any evidence of record.  Tr. 709.

Further belying Dr. Rose's assessment is the fact that plaintiff's back impairment was not diagnosed by objective medical evidence until 2008, approximately three years after the date last insured.  Plaintiff lacked objective medical evidence pertaining to her back impairment on or before the date last insured, a fact which goes unacknowledged in Dr. Rose's evaluation. Tr. 553-64, 709; *see, e.g.*, SSR 96-4p, *available at* 1996 WL 374187 ("under no circumstances may the existence of an impairment be established on the basis of symptoms alone").  Likewise, Dr. Rose did not reconcile plaintiff's post-date last insured "mild" objective findings with her opinion of total disability.  Tr. 338, 408, 410, 418, 423, 449.  This is especially problematic given plaintiff's January 2006 on-the-job back injury, the progressive nature of her condition, and the fact that she reported to Dr. Hein that her pain worsened after the date last insured. Tr. 413, 547; *see also In re Marriage of Medlyn*, 192 Or App 89, 100, 83 P3d 945, *rev denied*, 337 Or 160, 94 P3d 876 (2004) ("[d]egenerative disease, by definition, progressively worsens

over time"); Tr. 443-44 (Dr. Hein noting "some progression of symptoms" in April 2009 and describing plaintiff's back condition as "deteriorat[ing]").

Moreover, the retroactive assessments of Martin Lahr, M.D., and Richard Alley, M.D., the state agency consulting physicians, to which the ALJ gave "great weight," reveal that plaintiff can perform work consistent with the RFC. *Compare* Tr. 14, *with* Tr. 375-82, 467.  As such, evidence from Drs. Lahr, Alley, and Hein, as well as the evidence surrounding the pertinent adjudication period, contravenes Dr. Rose's assessment of plaintiff's functioning prior to the date last insured.  *See Tonapetyan v. Halter*, 242 F3d 1144, 1149 (9th Cir 2001) (opinion of a non-examining physician "may constitute substantial evidence when it is consistent with other independent evidence in the record").

In sum, the ALJ provided legally sufficient reasons, supported by substantial evidence, for discrediting Dr. Rose's opinion.  Thus, the ALJ's evaluation of Dr. Rose's assessment should be upheld.

## III.    RFC Assessment

Lastly, plaintiff argues that the ALJ's RFC and step five finding are erroneous because they do not account for limitations set forth in her testimony and the opinion of Dr. Rose.

The RFC is the maximum a claimant can do despite her limitations. 20 CFR § 404.1545.  In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony.  SSR 96-8p, *available at* 1996 WL 374184.  Only limitations supported by substantial evidence must be incorporated into the RFC and, by

extension, the dispositive hypothetical question posed to the VE.  *Osenbrock v. Apfel*, 240 F3d 1157, 1163-65 (9th Cir 2001).

As addressed above, the ALJ properly discredited plaintiff and Dr. Rose, and there is no indication, outside of this evidence, that plaintiff suffered from functional limitations beyond those outlined in the RFC during the pertinent adjudication period.   Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error, is without merit.  *Bayliss*, 427 F3d at 1217-18; *Stubbs-Danielson v. Astrue*, 539 F3d 1169, 1175-76 (9th Cir 2008).  Thus, the ALJ's RFC and step five finding should be upheld.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due Friday, October 24, 2014.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 7th day of October, 2014.


s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge


17 - FINDINGS AND RECOMMENDATION